Caruthers, J.,
delivered the opinion of the Court.
This was an indictment for eaves-dropping. It was quashed by the Circuit Court, and the State appealed.
The charge is, that the defendant, “ unlawfully and stealthily did approach and come near to the room where the jurors aforesaid, were then and there assembled for the purpose of considering and transacting such business as was properly before them as jurors, as aforesaid; the said jurors then and there being convened and assembled, as a grand jury for the county of Scott, he, the said defendant, then and there being, as aforesaid, did unlawfully, for the purpose of listening to, and overhearing what was then and there said and done; did then and there unlawfully and stealthily eaves drop, and lis *300 ten to the proceedings in the room aforesaid, and was then and there guilty of the crime of eaves-dropping, to the evil example,” &c.
The Court below was of opinion that this indictment did not set forth an indictable oifenee, and quashed it.
That eaves-dropping is an indictable common law offence, was decided in this State at a very early day, in- the case of The State v. Williams, 2 Tenn. R., 108.
Blackstone defines it thus: “Eaves-droppers, or such as listen under walls, or windows, or the eaves of houses, to hearken after discourse, and thereupon to frame slanderous and mischievous tales, are a common nuisance.” 4 Bl., 168.
Bishop says: “ It consists in the nuisance of hanging about a dwelling-house of another, hearing tattle, and repeating it to the disturbance of the neighborhood.” 2 Bish. Crim. Law, 274.
The indictment was doubtless drawn up in haste, and if not void, it is certainly without form. Yet, it is easy to see from it what is the charge to he answered, and it is set forth with reasonable certainty.
We adopt the definition of the offence given by Blackstone, as the true description of the offence,' and by that test the present case.
The acts imputed to him in the presentment, is, that he stealthily, that is, secretly, or clandestinely, approached near to the room occupied by the grand jury, where, and while they were engaged in the performance of their duties, for the “ unlawful purpose of listening to and overhearing what was then and there said and done.”
It is difficult to conceive of a more mischievous species of this offence, than that now presented. The members of the grand jury are required, by their oath, to keep their counsels secret, and are not permitted to disclose their own acts. This is a rule adopted upon the soundest policy. It produces free, and unrestrained disclosures and consultations in relation to their duties, and saves them from persecution or injury from the violent and unprincipled, upon whom it may be their duty to *301 inform, or against whom they may feel bound in the discharge of their duty, to act or vote. But, in addition to these considerations, it is necessary for the ends of justice, to keep their proceedings secret, so that information may not reach offenders of forthcoming charges against them, and thereby enable them to escape. All these evils, and more, would result from eaves-dropping. If it be an indictable offence to clandestinely hearken to the discourse of a private family, by which only a private injury would be done, much more must it be to obtain, by the same unlawful means, the secrets of the jury room. The same salutary principle must cover both cases, and for a much stronger reason the latter. If the one be a nuisance, much more is the other. The proceedings of juries, both grand and petit, are so important to the life, liberty and property of the citizen, that they cannot be too carefully guarded. Invasions of the sanctity of the jury room cannot be too severely punished. No intrusions upon their deliberations can be tolerated. The Courts are too remiss in the discharge of their duties on this subject. It cannot be that the law has made no provision for the punishment of offen-ces like this. We think it has, and, therefore, reverse the judgment quashing this presentment, and remand the case for trial.